number 1 5 2 0 4 3 and number 1 5 2 0 5 3 Charles Morse et al. versus Michael Cloutier and Shawn Maha et al. Thanks Sam. May it please the court, I'm Tom Donohue for defendants, appellants Bateman, Cloutier, Cloutier, and Obruchovsky. May I have two minutes for rebuttal? Yes. Thank you your honor. In this case these officers were entitled to qualified immunity because the right of doorway arrests is not clearly established or beyond debate. Neither the plaintiff nor the district court put forth the case as it must. Once officers claim qualified immunity, the burden and the heavy burden is then on the plaintiffs to come up with a case of similar facts that is put that would let all reasonable officers know that their actions in the specific context of this case would violate the fourth amendment. And there is the closest case within this circuit is the Joyce case that was decided by the circuit in 1997. And since then it is certainly held to be good law. And this case is a much clearer and more powerful case for qualified immunity than Joyce for several reasons. Was there a warrant in this case as there was in Joyce? There was not a warrant in this case your honor. Are we concerned with an RSD who is a homeowner in Joyce? No your honor. And we are in this case? We are in this case. The plaintiff is the homeowner. But as other cases have held in the 11th circuit, McClish in a case cited to in 2014 in the Abrami case by this court, it states that the purpose of the warrant in the context of this case is to keep police out of the house absent some exceptions. Here we have the exception of the police do not enter the house until after they have placed the plaintiff under arrest. We also have the exception of exigent circumstances in this case. Exigent circumstances at this stage of the game may not be available to you because the district court, Judge Hillman, decided exigent circumstances as a matter of fact. He said the testimony was conflicting. That if you draw the inferences from the testimony favorable to the plaintiff, the circumstances aren't exigent at all. If you draw the inferences from the testimony unfavorable to the officers, the circumstances may be exigent, but that's a decision we have to, at this stage, accept because we can't review it. Your honor, that's where the district court got this wrong. He used a subjective analysis, not an objective analysis. No, he made that argument in your brief, and I've looked at the record very carefully, and that's just not so. Judge Hillman used precisely the correct analysis and cited precisely the correct evidence. He determined what an objectively reasonable officer, knowing what these officers knew or reasonably could be held to a known, would have thought under the circumstances. That's the standard. Well, respectfully, your honor, I disagree with that. We accept all of the facts in the light most favorable to the plaintiff. You accept the fact that there was no concern about violence, that the young men were not in any way threatened because they were some distance away at a completely different location in the company of another officer? That Morris had made no threatening gestures? At the doorway, that's correct. That is correct at the doorway. Well, that's the circumstance we're concerned with. Well, previously, the victims had told the police officers that he may have a gun, that he was using racial epithets, that he was throwing things at them, that he threatened to kill them with a gun. His conduct was terrible, but that was an hour before, more than an hour, and at the point he's approached in his house, the situation is completely under control. The officers have the house surrounded. Morris isn't causing any trouble. He simply says, if you want to arrest me, get a warrant. If you want to come into the house, get a warrant. They have already arrested him while they're standing outside, and he is within the zone of the door, arm's length from the door. He's having conversations with these police officers, and there is no law that would tell a reasonable police officer that doorway arrests are unconstitutional. Just before we get back to doorway arrests, just on exigent circumstances, if I'm correctly reading Judge Hellman's decision, he never rules on qualified immunity with respect to exigent circumstances. He concludes there are no exigent circumstances, but if I understand when he gets to the qualified immunity section, he never does that analysis at all. Is that right? That's correct, Your Honor. So, the question of whether, even if he's right that there were no exigent circumstances, whether it was clear that there were no exigent circumstances, is a relevant question of qualified immunity. We have no ruling on that question. That's a purely legal question, and we can affirm on any ground that the district court, we can affirm the judgment on any ground, even if the district court didn't reach it. So that then takes me back to the factual issues that you were just talking about with Judge Selya. Is there a finding by the district court with respect to whether the wife at the doorway was in disagreement with Mr. Morse or not? Your Honor, I don't remember whether it's in Judge Hellman's opinion. It is certainly within the plaintiff's brief that the wife was yelling and screaming and telling the plaintiff to open the door. The plaintiff itself hasn't suggested its version of the facts. Is it consistent with that happening? No, and they've accepted that. And that's yelling and screaming at the door prior to the arrest or after the arrest? After the arrest. Yeah, so prior to them entering the house, the plaintiff hasn't accepted that there's any reason to think that the wife is in disagreement with Mr. Morse. Is that right? That's right, Your Honor. I don't believe that's correct. So if that's right, then the only thing that's true at the doorway, they have no reason to believe Mr. Morse poses a danger to the wife. Is that right? You're not arguing that they had some reason to believe that? Did you argue that? Have you argued that at any point in the case? We didn't argue that in our brief, Your Honor. Okay, so that's why you don't have that issue. It's certainly a reasonable assumption. But that has not been argued? That has not been argued, Your Honor. So you're solely going on the idea that there's an action in circumstance just because of the danger Morse might pose to people outside the house? Correct. You're also getting the house because he's intoxicated. That's the information the police have. Threatening to kill somebody. If he's not threatening the wife, who's he going to threaten to kill in the house? There's nobody else in the house. I think it's reasonable for police officers, based on tracking him through, that he might harm his wife if he's drunk. That's why you said you never argued that. The sole arguments you made to us about action in circumstance concerns threats to people outside the house. Correct? That's correct. Okay. That's correct.  Your time is up. Thank you, Your Honor. Good morning. My name is Joseph Donlin. I represent Trooper Sean Maher, defendant down below and appellant before the court. Trooper Maher is appealing on the denial of the qualified immunity. Excuse me. Is Trooper Maher, does he claim that he's in a different position in any material respect to the local officers? In this respect, in that his actions were not properly analyzed based on what he knew in the actions he specifically took. Rather, they were lumped in with the others. He claims a right to have his conduct assessed on its own merits. Right. But in the district court, did Maher argue that he was somehow differently situated than the Sturbridge officers? That the facts that pertained to him were not the facts? I thought the argument was made to the district court that everybody was in the same boat. It was, Your Honor, and they most certainly were. The problem arises with the way that the district court analyzed the conduct of the officers. Yes. So even though he was there, he had knowledge and he had his experiences and his actions were based on things that are unique to him. And that was put before the district court. And that's what we suggest wasn't given the proper due by the court. We believe that whatever he knew and why he acted should have been considered and it shouldn't have been, if you will, on the lowest common denominator. What does the record show that he knew or didn't know that was different from what the Sturbridge officers knew or didn't know? Well, what he knew... And how does this relate to the objective standard? Well, because he can only be held responsible for violating the constitutional rights of the plaintiff based on what he did. And so to get to what he did under qualified immunity analysis, we need to know what he knew. It's not why he did it, but what did he know? And then what did he do based on that? So answer Judge Selye's question. And I apologize. I'll have to ask for it again. Yeah. What particular facts do you say that Maha knew or didn't know that differentiates him from the Sturbridge officers? Well, he knew certainly everything that they did. I don't argue that he knew something different, but it's based on how he analyzed the situation and how he reacted to it. But it doesn't matter how he analyzed the situation. They're all held to the duty of an objectively reasonable police officer. Now, how he reacted may be a different story. If he did something different than the other officers, if he screamed at them, for example, don't break down the door, we don't have a right to do it, that would put him in a different position. Most certainly it would. Yeah, but so what was it that he did that differentiates him from the other officers? Well, when he did, he acted with the good faith that what he was doing was appropriate under the circumstances. Yeah, but that's why all the officers are claiming that. And it's a question of whether an objectively reasonable officer would have done what he did and what the other officers did. And from what the record seems to reveal, the officers who were at the front door of the residence acted in a concerted manner. I've seen nothing in the record that differentiates any of them from one another, except perhaps for the officer who took the additional step with the consent of the others of forcibly breaking down two doors. Certainly without objection, but what this officer did was that he believed, I go back to Officer Fortier, who suggested that there wasn't a threat there. Officer Marr's analysis, as we set out in his brief, as he set out in his affidavit to the lower court, suggests that he was deeply concerned about violence, that he had a person who had just thrown rocks, had committed felonies and misdemeanors, had been using racial epithets, had threatened to go back and get a gun and kill the victim's family members one by one. And coupled with that, this was a man who had previously engaged in assaultive behavior with a firearm. So based on that, his objective analysis was reasonable. And it certainly can't be said to have been purely incompetent. But rather, I suggest it was more than reasonable under the circumstances. Can we go back to Joyce for a second, just so I understand it? I understand the argument about doorway arrests. As I read Joyce, it seemed like a significant piece of the analysis turned on the idea of hot pursuit and the reasonableness of the reading of Santana in which, somewhat surprising to me, hot pursuit can obtain even when the person was never first seen in public. Correct. Right. Is the idea here that you're contending that same hot pursuit logic made it unclear as to whether the entry was justified? I'd say that it made it, at least, I don't think it was unclear. I think it solidified the position that because of the actual... It needed to be unclear whether it was justified. Yeah, in the hot pursuit, that they had a right under Santana to go in. Right. So independent of what we thought of doorway arrests standing alone, in other words, in a case in which there's no hot pursuit, I thought Joyce was the combination of hot pursuit and being behind the screen door was the key thing and... Joyce is in that respect. So could you just tell me in what way this case could plausibly be described as one involving hot pursuit? Hot pursuit is because they had a canine out tracking the gentleman. He was directly across the street from where the incident occurred and he was taking a circuitous route that took him, by the record, an hour to get home. I think it's reasonable to conclude he was avoiding. That's avoidance, another standard you look at under the exigency circumstances, Your Honor. So with that said, I see my time is up and I'll rest on my break unless there's further questions. Thank you. Thank you very much. Good morning, Your Honors. My name is James Triplett. I represent Charles and Lisa Morse. Your Honor, to address your particular issue first, you indicated in your questioning that you wondered whether there was any kind of qualified immunity analysis that the judge had done in this particular case, Judge Hillman. And I would suggest to you that, in fact, he did a very thorough qualified immunity analysis. And starting at the beginning, he essentially said that, obviously, American citizens have the right to be free from their home. It's a very core value in our Fourth Amendment rights. And based on that, there is a line at the threshold based on a number of cases that I think we all are aware of. I just was asking whether he did a qualified immunity analysis of the exigent circumstances, and he had not done so. I don't see it in the opinion. It doesn't mean that, therefore, the opinion has to be reversed, but I just think when he does qualified immunity, he doesn't say anything about whether exigent circumstances. Well, actually, and again, maybe I'm just misunderstanding you, but he went, in my view, he went through a very thorough analysis of the warrantless entry by essentially saying that there were two situations, there were two things that had to be considered. One is to whether there was a clearly established right, and the second was based on the circumstances as to whether, in fact, in this particular case. I thought the various ways you could get one would be doorway arrest. One would be some idea of hot pursuit. Correct. And a third way would be because of the danger posed by the person. That's the exigent circumstances that I meant. Oh, I see. Yes. And he never does do a qualified immunity analysis at that third point. He just says that there was no danger, and therefore you can't say that. But I don't see him then saying anything about qualified immunity on that point. Am I missing something? Well, again, I think that's implicit in his report. Yeah, it is. I suppose that's what we agree on. He actually made some very distinguishing features between, for instance, Joyce in which there was a doorway arrest and this particular case in which he laid out implicit in the decision where Joyce specifically differed from the Morris case in this particular case. I'm just saying he never makes a ruling about how reasonable it would be, even if wrong, to conclude that the person in the house was posing a real danger. Or do you disagree with that? I believe in total inference he does because he, again, goes through an analysis where he indicates that, for instance, as the judge pointed out, Judge Sala, that in fact the victims were protected. They actually went to this person's house, Mr. Morris' house, prior to ever going there with a series of officers and surrounding the house. Several of the officers said that they didn't think that they were even going to arrest this guy at one point. The officer who finally kicked in the door said, well, we didn't really arrest him because there was any danger going on. He wasn't corroborating. This went on for 10 or 15 minutes, according to one of the officers' testimony. So, yes, by implication, I believe that Judge Hillman is saying that there was a reasonableness or lack of reasonableness on the part of the police in this particular case. See, I read Judge Hillman's opinion as saying that he thought that there was a question of fact as to whether exigent circumstances or a threat of danger existed and, therefore, that a jury could find that it didn't. I believe that's correct. He did lay that out. Which is as far as he's got to go. If he found that, we've got to accept it because we can't review that sort of determination on an interlocutory appeal. I guess the only question for me is just whether the relevant factual determination is that the facts are of a kind that no reasonable person could read them to create danger, and that's the part that I didn't quite see in his opinion. Yes, I believe that's absolutely correct in this particular case. And, again, I believe that the major issues have been covered here, but I would suggest to you that in this particular case, if we are going to open the door, the courts are going to open the door for kinds of situations where a person has the approach of the police and there's a discussion going on about maybe whether the person did or did not commit a crime and the police all of a sudden decide that they're going to arrest this person and the person says, listen, I think you need to get a warrant and please come back. But everything you say about that, we can close that door, even an opinion ruling against you. By just saying that the right exists, so going forward. So the question in this case is, I think, just in light of Joyce, since we hadn't said anything post-Joyce, could one read Joyce reasonably to think that on these facts it was okay to go in? And if we now think that's just a reasonable reading of Joyce, Joyce suggests that, but boy, that's a really terrible thing to have opened up just as you said. We can close it down in an opinion ruling against you. Right. Right? So the relevant question to me is just what does Joyce reasonably suggest about these circumstances? And could you just address the hot pursuit point? Because Joyce seems to put a lot of weight on the idea of hot pursuit. Sure. I would be glad to. In this particular case, there was no hot pursuit. It was, as Judge Salis said, more than an hour after this whole situation went on. They had the police. I mean, they called the state police. How much time had there been in Joyce? They pretty much immediately. In Joyce, it was almost immediate. Yeah, they had already obtained a warrant. They had already talked to a judge, talked to a magistrate. And by the way, as you noted in my brief, the police in this case had every opportunity within that hour to call the judicial management system and actually obtain a warrant because Massachusetts, as many other states, I'm assuming, you call a judge up on the phone at 12 o'clock at night and you say, hi, judge, this is what we got. Will you please authorize a warrant for us to go and get this? But they had plenty of time to do that. And they didn't even bother. They just decided they were going to this man's house after they had already been there looking for him. And by the way, the record indicates that they didn't say, hey, there's a danger going on here. Your husbands are threatening people. The officer just said, according to the testimony, please have him give us a call when he comes in. We would like to talk to him. There was no indication whatsoever that there was any kind of hot pursuit going on at that particular time, even when they went to the door. They spent 10 or 15 minutes, four officers crowding in a door, talking to this guy, trying to get him to come out of the house. I would say who does that if a person's in danger and there's some kind of hot pursuit that's going on? They're trying to talk him into coming out of the house. Could you just remind me of the relevant facts on the hot pursuit issue in Joyce itself? In Joyce itself, they obtained a warrant. I believe in that particular case, he was in his mother's house. She was sleeping downstairs. They came to the door with an arrest warrant. I believe it was on a domestic abuse violation. In that particular case, the police – The relevant warrant that was missing there would have been a warrant to go into her house, right? That's right. Well, they didn't get a search warrant. The damages action, the relevant warrant they needed was the warrant for her house. That's correct. So how much time would they have had to get that warrant in Joyce? Whatever reasonable police procedure would require. No, no. I'm saying the relevant comparative points of time would seem to be – you said, look, they had an hour in this case to go around looking for a warrant, and they didn't do it. So how do you say it's hot pursuit? Let me see if I can speed this up and answer Judge Bowen's question. In Joyce, they got a tip that Lance Joyce, who did not live in his mother's house, was there. They already had the arrest warrant. Yep, that's correct. And they responded immediately to the tip. That's correct. So there's no time between the moment when the pursuit began and the time they go into the house? No. When they went to the door, he answered it. He said, yeah, right. He turned around and walked away. The door wasn't locked as in this case. Mr. Morse specifically locked his outside door when they came to the door. Essentially sending a message to them, listen, you don't cross that threshold unless you have the right to do it. In the Joyce case, they simply said, okay, you walk away, we're following you. And they followed him right into the house and the dining room and had a warrant and placed him under arrest. And when Joyce walked away, the police had no reason to believe that he might not be going for a back door or another way out of the house here. However, as I understand the record, the police had the house surrounded. That's correct. Thank you. Based on the Joyce decision, no reasonable officers would know in the specific context of this case regarding doorway arrests that their acts in this case would violate the Fourth Amendment. And that is in two parts. Is that even if we think that no reasonable officer could have thought this was a hot pursuit? Well, the hot pursuit in Joyce, Your Honor, is not once they find out that there's a warrant in place and they get the tip that he's at his mother's house. The hot pursuit is after they place him under arrest through the doorway, he tries to evade the arrest by going back into the house just as what happened here. So that's in the context of the doorway arrest. The hot pursuit is the escape once he's placed under arrest through that screen door. No reasonable officers based on Joyce could know that it violates the Constitution to place somebody under arrest that's within the doorway, within arm's reach as he was here because he reached out, he locked the screen door. Once he was placed under arrest, he closed the main door. So he was clearly within arm's reach. Did he do anything at the doorway that would plausibly have led them to decide only then to arrest him when they were looking for him for the whole period of time beforehand? Well, he didn't do anything in terms of a furtive gesture or anything threatening. Because the rule you're setting up suggests that it's not in my interest to just say anything about whether I'm going to arrest him until I see them at the house. Well, there's overwhelming probable cause in this case, so they could have even worse for you. Yeah. And there's also another salient difference between this case and Joyce. Because here, he came to the, not this case in Joyce, but this case in Santana on which Joyce relies, because in this case, he came to the door only because the police knocked and in effect summoned him to the door. And that runs into a potential problem with Kentucky v. King about the police creating exigent circumstances and then acting on them. Kentucky v. King does not apply in this case because it came out two years after this case occurred. I understand that, but the concerns that are described in Kentucky v. King are very real concerns. In Kentucky, if I may, Kentucky v. King also held that there was a dispute among the circuits as to police created exigency. So certainly, that wouldn't be clear for these police officers. Thank you, Your Honors.